UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

**UNITED STATES OF AMERICA**

    **v.**

                              **No. 1:93-cr-180**

**WALI AMIN SHAH,**

                                        **MEMORANDUM OF LAW**

              Defendant.

_____

### DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE
### BASED ON EXTRAORDINARY AND COMPELLING REASONS

      Wali Shah, by undersigned counsel, moves this Court pursuant to 18 U.S.C. §

3582(c)(1)(A)(i), as amended by the First Step Act, for a modification of his sentence based on

extraordinary and compelling reasons, which include his high risk from COVID-19 based on his

asthma.

      The current COVID-19 epidemic poses an extraordinary and compelling reason to release

Mr. Shah. As noted below, as stated in *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C.

Mar. 24, 2020), on March 19, 2020, the House Judiciary Committee urged that all existing

authority be utilized to reduce the number of people in federal prisons, especially those who have

health conditions putting them at high risk from the virus. Since that time, many courts have

granted compassionate release for that reason. A judge in this district recently granted this

motion in a terrorism case – where the defendant was convicted of conspiring and attempting to

provide material support to Al Qaeda.  *United States v. El-Hanafi*, 2020 U.S. Dist. LEXIS 87888

(SDNY May 19, 2020)

      The virus is already spreading in many federal prisons - soon it may be too late for Mr.

Shah. See https://www.bop.gov/coronavirus/. There were **57 cases on April 1, and as of June 9**

**there are 6100 cases** (including 3975 cases where the inmates have recovered) where inmates have tested positive for the virus in federal prisons. There have also been **78 deaths,** *including one at USP Terre Haute*, part of the complex where Wali Shah is imprisoned. The number is probably much higher, as little testing has been done. Mr. Shah is 54 years old and suffers from chronic medical conditions, including obesity, sleep apnea, high cholesterol, and possibly asthma.

Significantly, he has already served *nearly all of his 30 year sentence* – he has been incarcerated since December, 1995, and is due to be released on 9/06/2021.

### Introduction

Mr. Shah is 54 years old, and suffers from conditions which put him at increased risk from COVID-19. According to Dr. Brie Williams, the risk of exposure to COVID-19 is extremely high in the prison environment, where it is impossible to practice social distancing. (See Affidavit of Dr. Brie Williams, attached as Exhibit "A," at 2-3.)

### Jurisdiction and Authority to Act

Mr. Shah is presently incarcerated, under BOP Register Number 42799-054, at FCI Terre Haute. He submitted a request for compassionate release to the warden on April 20, 2020, and. Mr. Shah's Application is attached at Exhibit "B". As it has been more than 30 days since the Application was received, Mr. Shah has exhausted his administrative remedies under 18 USC 3582(c)(1)(a), which provides that the court may act 30 days after the warden receives the application. *United States v. Hammond*, 2020 US Dist. LEXIS 67331 (DDC April 16, 2020.)

### Mr. Shah is Eligible for Release Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, and the Criteria Set Forth in USSG 1B1.13

The governing statute directs the Court to first determine if there are "extraordinary and compelling reasons" consistent with policy Statements by the Sentencing Commission; to

2

determine whether the defendant poses a "danger to the safety of any other person or the community" as set forth in 18 USC 3142(g); and finally to grant the motion if the factors set forth in section 3553(a) do not require its denial. 18 USC 3582(c); 18 USCS Appx 1B1.13; *United States v. Ebbers*, 2020 US Dist. LEXIS 3746 (SDNY 2020.)

Because of the high risk COVID-19 poses to him, it is submitted that Mr. Shah is eligible for sentence modification based on Other Extraordinary and Compelling Reasons [here, COVID-19]). USSG 1B1.13 Application Note 1(D.) Relevant caselaw granting relief under Application Note 1(D) is discussed below.

As also discussed below, Mr. Shah poses no safety risk to anyone. Moreover, the 3553(a) factors support release, as set forth in more detail below.

**The Underlying Case and Sentence**

Wali Shah was convicted back in 1996 of Conspiracy to Defraud the United States under 18 USC 371; Attempted destruction of U.S. aircraft under 18 USC 32(a)(1) and (7); Attempted use of a destructive device in proximity to US aircraft under 18 USC 32(a)(2) and (7); Conspiracy to murder US nationals under 18 USC 2332(b) and (d); conspiracy to bomb US nationals outside the United States under 18 USC 2332a; Using an explosive decide under 18 USC 924(c) and (2); and attempted escape under 18 USC 751(a.) He was sentenced to concurrent terms of 30 years on all counts, and is *scheduled to be released in a little over a years, on 9/6/2021.*

Mr. Shah was charged along with two others in a plot to bomb US aircraft in the Philippines. Mr. Shah was only briefly in the Philippines, for a few days in January, 1995, and during those few days, his involvement chiefly consisted of picking up three passports for one of his co-defendants, Abdul Hakim Murad. The plot was discovered soon thereafter when the two

co-defendants were discovered burning chemicals in their Manila apartment. Mr. Shah, due to his connections to the co-defendants, was arrested at that time, but escaped and was recaptured in December, 1995. Subsequently, he unsuccessfully attempted to escape from the MCC after being charged and transported to New York – that was the basis for the escape charge in the indictment.

While the offense was egregious, Mr. Shah is remorseful about his involvement in the plot. As noted above, he has served almost all of his thirty-year sentence and has an excellent institutional record. It is noted that compassionate release was recently granted in two different terrorism cases - *United States v. El-Hanafi*, 2020 U.S. Dist. LEXIS 87888 (SDNY May 19, 2020) and *United States v. Hossain*, 1:04-cr-00402 (NDNY June 8, 2020.)

There are also several more recent terrorism cases where defendants have gotten significantly lower sentences. In *United States v. Thavaraja*, 740 F.3d 253 (2nd Cir. 2014), the Second Circuit upheld a 108 month sentence for the "principal procurement officer" of the Tamil Tigers (Liberation Tigers of Tamil Eelam or LTTE), a designated terrorist organization which carried out many acts of violence in Sri Lanka, against both military personnel and civilians.

In addition, all of the following defendants were convicted long after Wali Shah and all have been released: *United States v. Hammad Samana*, (CDCA 8:05-cr-00214) (*70 month sentence for man convicted of conspiracy to wage war against the United States under 18 USC 2384*); *United States v. Yassin Aref*, 2007 U.S. Dist. LEXIS 17919 (NDNY 2007); (180 month sentences imposed *after trial* for material support to a terrorist plot in New York City – the Guidelines range was 30 years to life and the judge cited *Booker*); *United States v. Tarek Mehanna* (DMA 1:09-cr-10017) (210 month sentence for man convicted *after trial* of material

4

support to Al Qaeda); *United States v. Burson Augustine*, (SDFL 1:06-cr-20373) (72 month sentence *after trial* in material support conspiracy); *United States v. Abraham*, (SDFL 1:06-cr-20373) (112 month sentence *after trial* in material support conspiracy); *United States v. Rothschild Augustine*, SDFL 1:06-cr-20373) (84 month sentence *after trial* in material support conspiracy); *United States v. Mohammed Yousry,* 590 F.3d 93 (2nd Cir. 2009) (20 months for man convicted *after trial* of material support conspiracy); *United States v. Balraj Naida* (DMD 1:08-cr-00091) (57 months *after trial* in material support case.)

### POINT I

### THE RISK POSED BY COVID-19 IS AN EXTRAORDINARY AND COMPELLING REASON TO REDUCE WALI SHAH'S SENTENCE TO TIME SERVED

The risk posed to Mr. Shah by COVID-19 based on his asthma, obesity, sleep apnea, and high cholesterol constitutes a reason to grant compassionate release herein, as has occurred in many recent cases.

### The COVID-19 Measures Taken by the Bureau of Prisons are Severely Inadequate

Despite the best efforts of the BOP, this virus has been continuing to spread through more and more facilities, with a sharp rate of increase in the number of cases over time. See *Forbes,* "Federal Bureau of Prisons Institutions not Showing any Sign of Flattening Curve,". https://www.forbes.com/sites/walterpavlo/2020/04/15/federal-bureau-of-prisons-institutions-not-showing-any-signs-of-flattening-curve/#6497965a54dd.   At Page 5, the article states, "More inmates are sick than the BOP is reporting and more inmates are not reporting that they are sick out of fear of being identified as sick."

On April 14, federal correctional officers at FCI Tallahassee filed an OSHA complaint, alleging that the BOP's failure to protect them from the virus put them in imminent danger.

https://www.tallahassee.com/story/news/politics/2020/04/18/correctional-officers-file-complaint-coronavirus-tallahassee-federal-prison/5152879002/

In addition to there being more *documented* cases than those reported by BOP, it is also clear that, as is true also in many other places, the true number of cases is much higher due to a lack of testing. Significantly, as of the end of April, *70 % of those who were tested were positive.* https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f

In *United States v. Gorai*, 2020 US Dist. LEXIS 72893 (DNV April 24, 2020), the court stated, at 6:

> "First, testing inside prisons has been scant except for people who self-report symptoms-which means that statistics about the number of infections already in BOP facilities are largely meaningless. And second, the plan provides no additional protections for high-risk individuals." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote citation omitted)."

The graph below (obtained from the New York Federal Defender Office) shows the number of COVID-19 infections per 1,000 people in various places, including the United States as a whole and within the Bureau of Prisons. The rate is clearly very high within BOP.



**Mr. Shah's Medical Conditions Put Him at Risk**

Upon information and belief, Wali Shah has been diagnosed with several medical conditions[1] which put him at risk if he were to contract COVID-19 – these include obesity; sleep apnea; high cholesterol and likely asthma.

### Obesity

Even without the medical records, it can be seen that Mr. Shah is likely obese, because his September, 2014 Program Review noted that he was overweight, and that he had a Body Mass Index of 30.4 in 2011. (Exhibit "C" at 11) (Recent medical records should show whether he lost or gained weight in the intervening time period, but Mr. Shah did note on his application that he is overweight. Exhibit "B") Obesity is defined as a BMI over 30. https://www.cdc.gov/obesity/adult/defining.html   Obesity is clearly a risk factor for COVID-19 complications. See https://www.usatoday.com/story/news/2020/05/23/obesity-makes-covid-19-risk-larger-hospitals-challenges-much-harder/5221600002/   and *United States v. Daugerdas*, 2020 US Dist. LEXIS 77658 (SDNY May 1, 2020) (the court found obesity to be a risk factor for serious illness from COVID-19); *Loyd v. United States* 2020 U.S. Dist. LEXIS 89357 (EDMI 2020); *United States v. White,* 2020 US District LEXIS 88542 (EDMI 2020.)

### Sleep Apnea

Wali Shah suffers from sleep apnea, and this is a known risk factor with regard to COVID-19. See https://www.news-medical.net/news/20200519/Sleep-apnea-may-increase-the-risk-of-severe-COVID-19-say-researchers.aspx and https://www.sleephealthsolutionsohio.com/blog/coronavirus-sleep-apnea-cpap-therapy/. See also *United States v. Jackson*, 2020 WL 2735724 (WD Va. May 26, 2020) (sleep apnea was one of

---

[1] Mr. Shah and counsel have thus far been unable to obtain any of his medical records. It is expected that the government will be able to obtain them very quickly and can then provide them to the defense.

the conditions putting the defendant at risk from COVID-19); *United States v. Readus*, 2020 US Dist. LEXIS 89351 (EDMI May 21, 2020) (sleep apnea was one of the conditions putting the defendant at risk from COVID-19); *United States v. Hunt*, 2020 US Dist. LEXIS 83124 (EDMI May 12, 2020) ) (sleep apnea was one of the conditions putting the defendant at risk from COVID-19.)

### High Cholesterol

Wali Shah also stated in his application that he had been diagnosed with high cholesterol. (Exhibit "B") High cholesterol is a known risk factor with regard to COVID-19. See *Daugerdas*, supra, at 7.

### Asthma

Asthma is a well-known risk factor with regard to COVID-19. See, i.e., *United States v Hunt*, supra. Mr. Shah believes he has asthma, but it remains to be seen whether that is documented in the medical records.

Thus it appears that Wali Shah, while not suffering from what would generally be considered very severe medical conditions, has three or four conditions which do increase the risk of severe complications or death were he to contract COVID-19. He is due to be released next year, and shouldn't face a possible death sentence.

Recently, federal courts, including this one, have been granting compassionate release motions based on the risk posed to particular defendants by the COVID-19 virus. *United States v. El-Hanafi,* supra (terrorism case – 44 year old with deep vein thrombosis); *United States v. Torres*, 2020 WL 2815003 (SDNY June 2, 2020)(2 brothers serving **life sentence** in drug case granted compassionate release based on COVID-19 risk and rehabilitation); *United States v. Rivera*, 2020 U.S. Dist. LEXIS 77662 (SDNY 2020) (54 year old with diabetes and hypertension

who was fugitive in drug case from 1987 to 2019 and only served 7 months); *United States v. Park*, 2020 U.S. Dist. LEXIS 73048 (SDNY Apr. 24, 2020) (44 year-old with severe asthma and immune-compromising disease granted compassionate release despite egregious nature of offense); *United States v. Anderson*, 2020 WL 2849483 (SDNY June 2, 2020) (47 year-old with severe obesity who served 43 months of an 84 month drug sentence); *United States v. Gonzalez*, 2020 WL 2766048 (SDNY May 28, 2020) (career criminal sentenced to 168 months for drug crimes with hypertension and obesity granted compassionate release); *United States v. Deleon*, 2020 US Dist. LEXIS 86975 (SDNY May 17, 2020) (man sentenced to 60 months for conspiracy to commit sex trafficking of minors, who suffers from asthma and other conditions at a facility with no known COVID-19 cases); *United States v. Campagna*, 2020 US Dist. LEXIS 54401 (SDNY March 27, 2020) (55 year old man with compromised immune system granted compassionate release); *United States v. McCarthy*, 2020 US Dist. LEXIS 61759 (SDNY April 8, 2020) (65 year-old man with lengthy criminal history serving recent sentence for violent crime granted compassionate release based on COPD and asthma); *United States v. Hammond*, supra (77 year-old serving 355 month sentence granted compassionate release); *United States v. Scparta*, 18-cr-578 (SDNY April 19, 2020); *United States v. Kataev*, 2020 US Dist. LEXIS 65756 (SDNY April 14, 2020) (51 year-old with sinusitis granted compassionate release); *United States v. Pena*, 2020 US Dist. LEXIS 85431 (SDNY May 11, 2020) (man with hypertension who served two thirds of 84 month sentence for **armed robbery**); *United States v. Resnick*, 2020 US Dist. LEXIS 59091 (SDNY April 2, 2020); *United States v. Smith*, 2020 US Dist. LEXIS 64371 (SDNY April 13, 2020) (at risk due to asthma); *United States v. Smith*, 2020 WL 2844222 (SDIA June 1, 2020) (man who served 12 years of a ***life sentence*** for drugs and firearms); *United States v. McKinney*, 2020 WL 2958228 (WDNY June 4, 2020) (career offender with severe

medical conditions who had *only served 18 months of a 120 month sentence*); *United States v. Dickerson*, 2020 WL 2841523 (ED Mo. June 1, 2020)(career criminal with nearly three years remaining of 15 year sentence, and who was in FCI Terre Haute); *United States v. O'Neill*, 2020 WL 2892236 (SDIA June 2, 2020) (45 year-old with asthma who had 3 ½ years left to serve of a 15 year drug sentence); *United States v. Hansen*, 2020 U.S. Dist. LEXIS 80494 (ND Ill. May 7, 2020) (man with underlying medical conditions at facility with no reported cases); *United States v Amarrah*, 2020 U.S. Dist. LEXIS 80396 (ED Mich. May 7, 2020) (45 year-old with several medical conditions – only served 1/3 of his sentence and at facility with no reported cases); *United States v. Etzel*, 2020 US Dist. LEXIS 77198 (DOR May 1, 2020); *United States v. Peters*, 2020 WL 2092617 (D CT 2020) (39 year old immune-compromised man in facility with no COVID cases); *United States v. Pomante*, 2020 U.S. Dist. LEXIS 85626 (EDMI May 15, 2020) (man with hypertension at facility with no reported cases); *United States v. Brooks*, 2020 US Dist. LEXIS 85671 (CDIL May 15, 2020 *(45 year old with asthma and hypertension serving 284 mo sentence for drugs and weapons*); *United States v. Simpson*, 2020 US Dist LEXIS 84490 (NDCA May 11, 2020) (has lung disease at facility with no COVID cases);  *United States v. Lucas*, 2020 WL 2059735 (WDNY 2020) (man with diabetes in facility with no COVID cases); *United States v. Gorai*, 2020 US Dist. LEXIS 72893 (DNV April 24, 2020) (man sentenced to 57 months in 2019 granted compassionate release; was high-risk due to asthma); *United States v. Coles*, 2020 U.S. Dist. LEXIS 72327 (CDIL Apr. 24, 2020) (48 year-old granted due to hypertension); *United States v. Thorson*, 2020 U.S. Dist. LEXIS 72595 (WDKY Apr. 24, 2020); *United States v. Curtis*, 2020 U.S. Dist. LEXIS 70804 (DDC April 22, 2020) (man serving *life sentence* for sex-trafficking minors granted compassionate release based on extremely severe medical conditions); *United States v. Bess*, 2020 U.S. Dist. LEXIS 70125 (WDNY April 22,

2020) (64 year-old man sentenced to 84 months in 2019 granted compassionate release based on his serious medical conditions); *United States* v. *Sanchez*, 2020 U.S. Dist. LEXIS 70802 (DCT April 22, 2020) (high-risk due to lupus); *United States v. Hansen*, 2020 US Dist. LEXIS 61946 (EDNY April 8, 2020); *United States v Sawicz*, 2020 US Dist LEXIS 64418 (EDNY April 10, 2020) (sex offender with hypertension granted compassionate release); *United States v. Asaro*, 2020 US Dist. LEXIS 68044 (April 17, 2020) (organized crime figure who committed violent crime at the age of 77 granted compassionate release); *United States v. Gileno*, 2020 US Dist. LEXIS 67729 (DCT April 17, 2020) (compassionate release based on chronic asthma); *United States v. Williams*, 2020 US Dist. LEXIS 63824 (NDFL April 1, 2020) (career offender serving life imprisonment for bank robbery released based on age and medical conditions.)

In *El-Hanafi*, supra, also a terrorism case, the court, in this district, recently granted the motion for compassionate release for a man who had served ten years of his fifteen year sentence, stating:

> "Defendant's offense was exceptionally serious…
> …The Court …remarked at sentencing that '[a]part from his very serious offense in this case, his record is unblemished… Defendant has maintained a spotless record throughout ten years of incarceration, and has participated in a long list of educational and job-readiness programs. …The Court is convinced that Defendant is a rehabilitated offender who poses no danger to the community…
> ***
> In light of Defendant's extensive health challenges and other considerations addressed here, the Court concludes that the COVID-19 pandemic renders the previously imposed term of incarceration greater than necessary to achieve the goals of sentencing. Releasing Defendant 33 months early from a 180 month sentence in order to protect his life and health during an unprecedented global pandemic will not undermine general deterrence. Defendant's previously imposed sentence is no longer just punishment when there is a real risk that it could be converted into a death sentence…." *El-Hanafi*, at 9-11

The same considerations apply herein. Mr. Shah's offense was quite serious, but he is older than Mr. El-Hanafi, and has served a higher percentage of his sentence (over 90 % his 30 year sentence.)

Several of the other cases, including *Asaro, McCarthy, Williams,* and *Hammond*, involve lengthy sentences, not due to end any time soon, and they were all imposed for violent crimes. *Asaro* involved a high-level organized crime figure who had lived a life of violence; *Williams* involved a life sentence for a violent crime and a long history of violence.

In contrast, Mr. Shah is due to be released anyway in a little over a year, and he has no criminal history, and no history of actual violence. Like the other defendants, he is at serious risk of dying from COVID-19 should he be exposed to it.

Mr. Shah is in FCI Terre Haute, where there are no current, *reported* cases of COVID-19. However, it is noted that USP Terre Haute, which is part of the same complex and likely shares staff, *does* have reported cases, and *even one death* on May 24, 2020. See https://www.bop.gov/resources/news/pdfs/20200526_press_release_thx.pdf.

In addition, Mr. Shah recently stated to undersigned counsel (on or about June 9) that a guard who had been in his unit had later tested positive for COVID-19, and an inmate upon whom that guard had served a disciplinary ticket was later complaining of breathing problems. That inmate lived in close proximity to Mr. Shah, and has now been taken to isolation.

In any event, several of the cases where compassionate release was granted based on the risk from COVID-19 involve BOP facilities where there are no reported cases. See *United States v. Deleon*, supra; *United States v. Feuch*t, 2020 WL 2781600 (SD Fla. May 28, 2020); *United States v. Moore*, 2020 U.S. Dist. LEXIS 89222 (D Ore. May 21, 2020); *United States v. Rahim*, 2020 U.S. Dist. LEXIS 89355 (EDMI May 21, 2020); *United States v. Readus*, supra; *United States v. Cotinola*, 2020 US Dist. LEXIS 86801 (DNM May 18, 2020); *United States v. Agomuoh*, 2020 U.S. Dist. LEXIS 86562 (EDMI May 18, 2020); *United States v. Ginsberg*, 2020

US Dist. LEXIS 84907 (NDIL May 14, 2020); *United States v. Simpson*, supra; *United States v. Etzel*, supra.

The *Etzel* court recently stated, at 9:

"Here, defendant has shown that he is particularly vulnerable to COVID-19. While there have been no identified cases of COVID-19 at FCI Sheridan, infection can spread with deadly speed. For example, some other BOP institutions, such as FCI Terminal Island have seen outbreaks grow into hundreds of confirmed cases in a matter of weeks. …"

Similarly, in *Amarrah,* supra, where the defendant had only served 1/3 of his sentence, the court very recently stated:

"…FCI Loretto does not have any confirmed cases, and the United States argues that this should be a compelling factor in the Court's analysis. However, it is unclear whether or to what extent FCI Loretto is testing the existing inmate population, and the United States' brief is silent on this issue…. Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that *70 percent of the inmates it tested were positive for the disease…. unless and until FCI Loretto implements a universal testing regimen, the Court gives no weight to the zero "confirmed" COVID-19 cases statistic*—particularly because BOP is housing detainees together, because the United States could not give the Court any information regarding current testing practices, and because basic disinfecting tools such as soap and hand sanitizer are not universally provided to the population. To the contrary, *the Court finds that the lack of testing aggravates its concerns about Defendant's likelihood to contract COVID-19* while in federal custody. Accordingly, the Court finds that extraordinary and compelling circumstances warrant a reduction of Defendant's sentence" *Amarrah,* at 19-20, some emphasis supplied.

Based on the foregoing, this Court should find that Wali Shah's medical conditions put him at risk for COVID-19, and that this constitutes an extraordinary and compelling reason under 18 USC 3582(c)(1)(A.)

## POINT II

## MR. SHAH POSES NO RISK TO ANYONE'S SAFETY

USSG 1B1.13(2) states that the court must find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 USC 3142(g)." 18 USC

3142(g) contains three factors for the court to consider in this regard: "1) the nature and circumstances of the offense charged; 2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history and drug and alcohol abuse; and 3) the nature and seriousness of the danger to any person or to the community that release would impose."

**Despite Extremely Harsh Conditions, Mr. Shah has had Excellent Conduct in Prison**

Wali Shah spent his entire prison sentence in particularly restrictive prison units, including the ADX in Florence, CO; the Communications Management Unit (CMU) in Marion, IL; and the CMU in Terre Haute, IN. He successfully completed the ADX step-down program and was transferred to the Marion CMU in 2010. As noted in *Aref v. Barr*, 1:10-cv-539 (DDC) (procedural due process challenge is ongoing) there is no step-down program or any way to challenge placement in a CMU; nor is there any transparent process for transfer out of one.

Mr. Shah's Custody Classification Form shows that he has completed more than 91% of his sentence. (Exhibit "C" at 1) His 12/17/19 Individualized Reentry Plan – Program Review shows that he has no recent disciplinary violations, and that he successfully completed more than 75 different programs while in BOP custody. (Exhibit "C" at 2, 8) Wali Shah has constructively spent his time in recent years learning how to paint, and has become an accomplished artist. Below is one of his recent paintings.



While Mr Shah's offense was extremely serious, he has no criminal history, and has

demonstrated rehabilitation. In *United States v. Redd*, supra, at 23, the court stated:

> "…Mr. Redd does not constitute a danger to the safety of others or the
> community. …At age 64, he is statistically unlikely to recidivate, and while his criminal
> conduct involved a firearm, his limited prior criminal history did not involved violence,
> and his conduct during his more than 20 years in prison is overwhelmingly positive…"

Like Mr. Redd, Mr. Shah's conduct over his *nearly 25 years in prison* has been

overwhelmingly positive. He has served almost all of his sentence, and will be deported when he

gets out of prison.

Courts have found that the fact that a defendant will be deported following release to be a

factor supporting compassionate release. For example, in *United States v. Bennett*, 2020 U.S.

Dist. LEXIS 87539 (SDNY May 18, 2020) a court in this district very recently granting the

motion, stating:

> "However, the unique feature of Mr. Bennett's application is that U.S.
> Immigration and Customs Enforcement has lodged an immigration detainer on him…
> ICE's detainer renders Mr. Bennett ineligible for community-based programs, including
> home confinement.
>         ***
>         Considering all of the circumstances raised by Mr. Bennett's motion, and
> especially that ICE will deport him forthwith upon his release, the Court is prepared to
> grant Mr. Bennett's motion on May 21, 2020. To facilitate Mr. Bennett's forthwith
> deportation, counsel should submit a proposed order that includes provisions for the

15

immediate deportation of Mr. Bennett to the United Kingdom upon his release from the MVCC to ICE custody…." *Bennett*, supra, at 3-5

Based on the foregoing, this Court should find that Wali Shah does not pose a danger to anyone's safety.

**POINT III**

**THE 18 USC 3553(a) FACTORS SUPPORT RELEASE**

Consideration of the applicable factors from 18 U.S.C. § 3553(a), as also required by § 3582(c)(1)(A), leads to the conclusion that reduction at this time of Mr. Shah's term of imprisonment to the time already served is warranted.

(a) The "characteristics of the defendant," § 3553(a)(1), now include his chronic medical conditions, as well as his *high risk of dying from COVID-19 in prison*. They also include his excellent institutional record.

(b) Service of nearly 25 years – *over 91 % of his sentence* - fully reflects the seriousness of the offense, and satisfies the need to provide just punishment and to afford adequate deterrence.

(c) Being 54 years old, Mr. Shah's age places him in the class of prisoners less likely to recidivate. Based on this, the fact that he will be deported, and the other factors discussed herein, the need to protect the public from further crimes is fully addressed.

(d) Consideration of providing needed medical care in the most effective manner suggests release rather than continued incarceration. *This is particularly true at this time when prisoners are at great risk from the coronavirus. For this reason alone, he should be released.*

(e) Given all the facts and circumstances discussed herein, a reduction in sentence is not inconsistent with the need to avoid unwarranted sentencing disparities. As stated in *United States v. Bellamy*, 2019 US Dist. LEXIS 124219 (DMN 2019), at 19, "…any disparity resulting from a

16

reduced sentence is not unwarranted given the special circumstances he faces in prison as a result of his health and age."

(f) Finally, upon consideration of the overall statutory command that all sentences, while sufficient to achieve the objectives identified in subsection (a)(2), are not "greater than necessary," 18 U.S.C. § 3553(a), the sentence of imprisonment in this case should be reduced to time served for extraordinary and compelling reasons. See *United States v. McGraw*, 2019 US Dist. LEXIS 78370 (SDIN 2019), at 16 (stating that based on the defendant's age and health considerations, further incarceration would be greater than necessary.)

## CONCLUSION

For the foregoing reasons, this Court should reduce Wali Shah's sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).

Dated: Jun3 10 2020

Respectfully submitted,

*Kathy Manley*
KATHY MANLEY
Attorney for *Wali Shah*
NDNY Bar Roll No. 105730
26 Dinmore Road
Selkirk, NY 12158
(518) 635-4005 (phone and fax)
Mkathy1296@gmail.com