
**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 29, 2020

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Wali Amin Shah,* 93 Cr. 180 (LAK)

Dear Judge Kaplan:

The Government writes in opposition to the defendant Wali Amin Shah's motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) seeking compassionate release from FCI Terre Haute in light of the COVID-19 pandemic. (*See* Dkt. No. 954 ("Def. Mot."). As set forth below, the defendant's motion should be denied because such a release would not comport with the Section 3553(a) sentencing factors.

## I. Background

In September 1996, after a three-month trial, the defendant was convicted for his involvement in a terrorist plot to bomb US aircraft in the Philippines.

As set forth in the Presentence Report ("PSR") dated October 31, 1996, beginning in approximately August of 1994, the defendant participated in a plot to destroy a dozen jumbo jets as they carried passengers over the Pacific Ocean. (PSR ¶ 15). The conspirators planned to destroy the planes by using explosives with detonator devices hidden in wristwatches. The conspirators had entered into the testing phases before the plot was uncovered. The defendant tested the detonation device by exploding a bomb inside of a movie theater in Manila on December 1, 1994. (PSR ¶ 17). Subsequently one of the co-conspirators left a bomb on a commercial flight on December 11, 1994 before deboarding. When the bomb subsequently exploded, it killed one passenger and injured several others. (PSR ¶ 19). Law enforcement agents only discovered the plot after a security guard noticed smoke coming out of the window of a co-conspirator's apartment in Manila on January 6, 1995, and notified the fire department and local police. Inside the apartment, law enforcement officers discovered a cache of explosive components and timing devices. (PSR ¶ 21). In a subsequent post-arrest statement, one of the co-conspirators (and co-defendants at trial) claimed that the airline bombings would have occurred within two weeks. (PSR ¶ 21). If the plot had succeeded, the Government estimated that approximately 4,000 innocent civilians could have been killed. (PSR ¶ 28).

The defendant was sentenced to 30 years' imprisonment. The defendant is presently serving his sentence at FCI Terre Haute, and has a projected release date of September 6, 2021.

The defendant filed a request for compassionate release with the warden of Terre Haute on April 21, 2020, which the warden denied on May 21, 2020.

On June 10, 2020, the defendant filed the instant motion, seeking compassionate release based on the health risk presented by COVID-19. The defendant argues that his medical conditions, including high cholesterol, asthma, sleep apnea, and obesity, render him particularly at risk for complications should he contract COVID-19.

On June 23, 2020, the Government received the defendant's medical records from 2019 and 2020 from the BOP, which are filed under seal as Exhibit A. As set forth below and as recognized by the Centers for Disease Control, the defendant's obesity does place him at a higher risk for developing severe illness were he to contract COVID-19.

## II. <u>Applicable Law</u>

Title 18, United States Code, Section 3582 states that a sentencing court "may not modify a term of imprisonment once it has been imposed" except under certain specific conditions. As relevant here:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction [. . .] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The relevant Sentencing Commission policy statement is U.S.S.G. § 1B1.13. That statement provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).

The Application Note describes the circumstances under which "extraordinary and compelling reasons exist," which include:

> (A) Medical Condition of the Defendant. —
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13, Application Note 1.

As the proponent of release, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Gotti*, No. 02 Cr. 743 (CM), --- F. Supp. 3d ---, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020) (defendant "has the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist").

Furthermore, regardless of the theory of "extraordinary and compelling reasons" under which a defendant proceeds, as noted above, the 18 U.S.C. § 3553(a) factors are relevant to whether release is warranted. *See* 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

## III. <u>Discussion</u>

The defendant's motion fails on the merits. A reduced sentence is available only for defendants who present "extraordinary and compelling reasons" for a modified sentence *and* for whom a reduction accords with the policy statements set forth in the Guidelines. *See* U.S.S.G. § 1B1.13. While the Government does not dispute that the defendant's obesity presents such an "extraordinary and compelling" reason, the defendant's release would be otherwise inconsistent with the Section 3553 factors.

As the Court is aware, the BOP has taken significant action to respond to the threat posed by COVID-19 and has implemented Phases One through Seven of its pandemic plan. The BOP's efforts have been largely successful in curtailing the spread of COVID-19 among its facilities, including at FCI Terre Haute where the defendant is incarcerated. The BOP reports there are no positive COVID-19 cases at FCI Terre Haute, and one recovered staff member.

The Government has obtained the defendant's BOP medical records. (*See* Ex. A). The defendant contends that he has obesity, asthma, high cholesterol, and sleep apnea.

The CDC has recently revised its guidance regarding obesity as a risk factor for COVID-19. The CDC presently identifies obesity with a BMI over 30 as raising the risk of severe illness upon contracting COVID-19. *See* Centers for Disease Control: Coronavirus Disease 2019: People Who are at Higher Risk (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html). Based on available records, the defendant's BMI is approximately 31.9. (*See* Ex. A at 16 (showing a recorded weight of 210 pounds as of July 2019); Def. Ex. C at 11 (reporting the defendant's height as 5'8")). Accordingly, the Government acknowledges that the defendant's obesity presents a risk factor identified by the CDC as heightening the risk of severe injury or death were the inmate to contract COVID-19.

The defense motion acknowledges that the defendant has not been diagnosed with asthma. Though people with moderate to severe asthma might be at an increased risk for severe illness from COVID-19, the defendant's medical records do not reflect any diagnosis, or symptoms, of asthma. To the extent that the defendant has other ailments, these ailments – including sleep apnea and high cholesterol – do not appear to substantially affect the risks associated with COVID-19. *See* Centers for Disease Control: Coronavirus Disease 2019: People Who are at Higher Risk (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html).[1]

The Government also notes that the defendant's medical records show that the defendant is receiving regular medical attention at FCI Terre Haute for a dermatological ailment, and that the defendant otherwise appears to be in good health. It is apparent that, but for the COVID-19 pandemic, the defendant would present no basis for compassionate release.

Nevertheless, based on the CDC's current recommendations, the Government agrees that obesity presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in § 1B1.13, cmt. n. 1(A)(ii), in that at this time the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself. Accordingly, the Government does not dispute that the defendant's obesity constitutes an extraordinary and compelling reason for relief under the compassionate release statute.

Nevertheless, the defendant is not entitled to relief. This Court must consider all pertinent circumstances, including the Section 3553(a) factors. Here, the Section 3553(a) factors counsel strongly against the defendant's early release. In particular, the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, all suggest that the defendant should be required to serve the remainder of his sentence. 18 U.S.C. § 3553(a)(2).

[1] The defendant's medical records reflect that, as of May 4, 2020, the defendant has requested to be tested for sleep apnea because he is suffering from sleep disturbances. The doctor's notes within the medical records describe, in part: "He states he was tested once several years ago but that the machine malfunctioned and he was not diagnosed with sleep apnea." (*See* Ex. A at 1). Even assuming that the defendant does have sleep apnea, sleep apnea is not a condition recognized by the CDC as affecting the risks associated with COVID-19.

The defendant intended to carry out a terrorist plot that, if successful, could have killed approximately 4,000 innocent civilians. (PSR ¶ 28). The defendant and his co-conspirators designed a plan to deploy explosives in commercial airlines full of innocent passengers, understanding that this would inflict the most serious amount of harm on the maximum number of innocents. The conspirators then took active steps to ensure the plan's success, including when the defendant tested the detonation device in a theater in Manila. The plan was only thwarted by law enforcement's accidental discovery of this plot weeks before its planned execution. A 30-year prison sentence, though lengthy, reflects the heinous nature of the plot. Indeed, the sentence imposed here was lenient considering the terrible harm that the defendant intended to cause. (*See* PSR at 26 (recommending life imprisonment "for these most serious charges and heinous plot")).

A compassionate release that would shorten the defendant's sentence would be contrary to the applicable Section 3553(a) factors, including the seriousness of the offense conduct and the intended harm to innocent victims, that compelled a 30-year sentence.[2]

## IV. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's request for an early release.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: ______/s/____________________
Mollie Bracewell
Assistant United States Attorney
(212) 637-2218

---

[2] There is an active ICE detainer lodged against the defendant. Once the defendant is released, ICE will take custody of the defendant and begin removal proceedings against him. *See, e.g.*, *United States v. Ng Lap Seng*, No. 15 Cr. 716 (VSB) (S.D.N.Y. May 8, 2020), 2020 WL 2301212, at *8.