UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

UNITED STATES OF AMERICA,

-against- 93-cr-180 (LAK)

WALI KHAN AMIN SHAH,

Defendant.

----------------------------------------x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

In 1994, defendant became involved in a terrorist conspiracy known as the Bojinka plot. The most malignant goals of the conspiracy – which included bombing roughly a dozen commercial airplanes bound for the United States, crashing an airplane into the CIA headquarters, and assassinating Pope John Paul II – were frustrated by law enforcement. But the conspirators successfully detonated a test bomb on one commercial jet, resulting in the death of a passenger and injury to several others. In addition, and in the course of testing the explosive devices that the conspirators intended to detonate on additional airplanes, defendant bombed a movie theater in the Phillippines. In September 1996, following a jury trial, defendant was convicted on numerous charges related to his actual and attempted acts of terrorism, specifically the bombings and attempted bombings. He was convicted additionally of attempting to escape from federal custody. The Court sentenced defendant to 30 years imprisonment. He is scheduled for release on September 6, 2021.

Before the Court is defendant's motion for compassionate release. The basis for his motion is that his alleged medical conditions, which include obesity, sleep apnea, high cholesterol,

and asthma, put him at a heightened risk of suffering adverse health consequences if he were to contract COVID-19 while incarcerated.

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment upon a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'"[1] Defendant asserts that he has complied with this requirement, and the government does not argue otherwise.

A court may grant compassionate release where (1) there are "extraordinary and compelling reasons" warranting a sentence reduction, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a).[2] The government concedes that defendant's obesity constitutes an "extraordinary and compelling reason[]" warranting his early release. Without

---

1 18 U.S.C. § 3582(c)(1)(A).

2 18 U.S.C. § 3582(c)(1)(A)(i).

The policy statement, set forth in the Sentencing Guidelines at Section 1B1.13 and the Section 1B1.13 Application Notes, provides that extraordinary and compelling reasons exist when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt.1(A)(ii). As this Court has stated previously, "the question whether it is bound by the Sentencing Commission's ('USSC') compassionate release policy statement is a much debated question and thus so too are the grounds on which the court may grant relief in a case like this." *See, e.g.*, *United States v. Merlo*, No. 17-cr-0738 (LAK), 2020 WL 3001039, at *2 (S.D.N.Y. June 4, 2020) (citations omitted); *United States v. Canales*, No. 16-cr-212 (LAK), 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020). The Court does not resolve the debate here because, for the reasons that follow, defendant's motion fails on other grounds.

expressing an opinion on the issue, the Court accepts this concession and assumes that defendant has satisfied the first requirement.

However, defendant's application fails because the factors set forth in 18 U.S.C. § 3553(a) do not support his early release. "Those factors include: (1) 'the nature and circumstances of the offense and the history and characteristics of the defendant,' (2) 'the need for the sentence imposed' to, among other objectives, 'provide just punishment for the offense,' and (3) the Sentencing Guidelines range."[3]

As noted, defendant was convicted for his direct participation in a terrorist scheme that caused at least one death and could have caused thousands more had law enforcement not foiled the plot. Defendant's crimes were serious, to say the least, and they merit a serious punishment. While defendant touts his record of good behavior in prison, which the government does not contest, he overlooks the fact that his detention began with an attempted escape from custody. And while defendant has served the majority of his sentence and is due for release in roughly fourteen months, these facts alone do not justify a departure from the sentence the Court imposed in 1996 – a sentence that was below the Guidelines recommendation of life imprisonment.[4]

Nor, to the extent that they are relevant to the "history and characteristics of the defendant," do defendant's alleged medical conditions shift the balance in his favor. Defendant does not in fact allege that he has asthma but only that he has "likely asthma" based on what his papers

---

3 *Merlo*, No. 17-cr-0738 (LAK), 2020 WL 3001039, at *3 (quoting 18 U.S.C § 3553(a)).

4 See PSR at 20, 27.

Defendant was tried before, and sentenced by, the Honorable Kevin T. Duffy, whose sentencing analysis the Court adopts and incorporates by reference.

describe as his own belief, rather than the opinion of a physician.[5] And with respect to sleep apnea and high cholesterol, the evidence linking these conditions to an increased risk of COVID-19 complications is mixed.

Defendant's obesity is more relevant. There appears to be little question that COVID-19 poses a heightened risk to obese individuals. But the magnitude of this risk depends on the extent of the individual's obesity. Defendant claims that, in 2011, his Body Mass Index ("BMI") was 30.4, which means, at his height of five feet eight inches, he was three pounds above the obesity threshold of 30.0. The government informs the Court in its opposition that, in July 2019, defendant's BMI was 31.9, which means by that time he was 13 pounds over the obesity threshold. While his condition is not de minimis, the Court is not persuaded that the risks defendant faces are so substantial as to outweigh the remaining sentencing factors, and particularly the severity of his crimes, which point strongly against his early release.[6]

The Court has considered defendant's remaining arguments and finds that they are without merit. The motion for compassionate release [Dkt. 952] is denied.

SO ORDERED.

Dated: June 30, 2020

Lewis A. Kaplan
United States District Judge

---

5 Shah Mem. at 7-8.

6 Both parties assert that no detainees at defendant's Bureau of Prisons facility have been diagnosed with COVID-19. While one staff member was diagnosed with the infection, that individual since has recovered.